M. M. WARMOTH *v.* SALLIE E. FITCHEN, ET AL.

M. M. WARMOTH *v.* L. WRIGHT, ET AL.

[Abstract Kentucky Law Reporter, Vol. 6—584, 586.]

**Title by Adverse Possession.**

One who claims title to real estate by adverse possession can only claim the tracts of land in his actual control and possession; that which he and his grantors have enclosed and held adversely to all the world.

**Means of Establishing Boundary Line.**

For a means of arriving at a proper boundary line between adjoining land-owners, see opinion.

APPEALS FROM MEADE CIRCUIT COURT.

February 28, 1885.

OPINION BY JUDGE LEWIS:

Appellees, defendants to these two actions tried together in the lower court, rely upon three grounds of defense.

1. They deny appellant's title to the tract of land, the boundary of which he alleges covers the two parcels sued for.

2. They deny that the boundary of that tract does include the land in dispute, and say it is covered by their deeds.

3. They plead limitation in bar of the actions.

As to the first ground the record shows that the lands claimed by appellant and appellees respectively, as well as that in controversy, are parts of the same original survey and the title to all is derived from a common grantor. Moreover appellant and those under whom he claims had the actual adverse possession of the tract claimed by him for more than fifteen years before the commencement of this action. He is not therefore required to show a connected chain of title from the Commonwealth in order to maintain these two actions.

It appears that in 1826 Blight and Darby conveyed to Brandenburg a large body of land, and in 1839 the latter conveyed to White two lots thereof, one of 70 acres and the other of 80 acres, afterwards ascertained to be only 67 acres. And by successive conveyances appellant in 1876 acquired title to the two parcels, his immediate vendor being Caldwell. Though it is not expressly stated it may be inferred from the deed from Blight and Darby to Brandenburg that the vendors and vendee were joint owners of the large survey, a part of which was conveyed to the latter. But however that may be, the land conveyed to Brandenburg lies north of and is bounded by a line described in the deed as running south 60° east with the line of John Mays' 6,500 acre survey, while Blight and Darby retained that portion of their land lying south, the two tracts owned by appellees being parts thereof and likewise bounded by that division line.

As therefore the tracts claimed respectively by appellant and appellee bind on and are divided by the original division line, it is

necessary to ascertain the location of that line in order to determine to whom the disputed land belongs.

The line was not run by the parties to these actions from the original corners called for in the deed from Blight and Darby to Brandenburg, nor does the record identify with certainty any landmarks made at the time it was run.

In the deed from Brandenburg to White two white oaks in Brandenburg's east line, being May's line, standing near Wilson's field, now gone, are called for as the beginning corner of the 70 acre tract, and from there the first line which divides it from the 67 acres runs N. 46° 45″ E. 112 poles to a white oak by Kennedy's fence.

The 67 acre tract called in the deed 80 acres, is described as adjoining the 70 acre tract on the northwest, being 65 poles in width and bounded by the two side lines of the 70 acres extended in the same direction northwest for quantity beginning at the beginning corner of the 70 acres according to a plat annexed.

All the disputed land claimed by appellee Wright and most of it claimed by appellee Fitchen adjoins, if not a part of the 67 acres, the residue adjoining or being part of the 70 acres.

Except the white oak corner at Kennedy's field which seems to be known and admitted, there is no other one to either the two tracts marked, though there is a stone set at the fifth corner, now called Berry's corner.

In January, 1880, before the commencement of this action the two tracts were under an order of the county court, on motion of appellant, duly processioned.

As appears from their report the beginning corner of the 70 acre survey was ascertained and established at a stone in Wright's line, by beginning at the second corner at Kennedy's field and running the course of the first line reversed to the end of the 112 poles, the distance called for. They then ran from the beginning corner thus established by the several calls of the deed to Berry's corner; thence N. 60 W. to the beginning, also the beginning corner of the 67 acres; thence the same course to a stone corner to W. F. Brown near a spring, the last being the south line of the latter tract.

The south line of the two tracts as thus run by the processioners leaves all the land in controversy inside of the appellant's boundary.

We are unable to perceive why, in the absence of a better test, the mode adopted by the processioners to locate the beginning corner of the 70 acre survey is not proper. For even if there be a variation of the magnetic needle it would not materially affect the location of the dividing line between appellant and appellees to follow the course called for in the deed, the dividing line between the 70 and the 67 acres only being sensibly varied thereby.

In 1838 Blight, under whom appellees claim, conveyed to Wilson 202 acres, which is described in the deed as beginning in the south line of Mays' 6,500 acres at a black jack and post oak near the Sinking road, corner to the Daniel Wooldridge tract of 110 acres near Harmon Brown Spring; thence by successive calls around to a post oak in Mays' line; thence with that line N. 60 W. to the beginning.

·In 1856 Wooldridge conveyed to Harriett Brown the 110 acres, the title to which he derived from Blight, and in the deed to her the tract is described as beginning at the northeast corner of Lewis' 400 acres in Barbour's line, which seems to be the same as the Mays line, two post oaks near Harmon Browns Springs; thence by successive calls around to a corner of Wooldridge's 215 acres in Barbour's line; thence with that line N. 60 W. to the beginning.

Thus it will be perceived three tracts conveyed by Blight corner together on Mays or Barbour's line, one of them conveyed to Wilson under whom both appellee's claim, one conveyed to Wooldridge containing 215 acres, and one to Wooldridge containing 110 acres and by him conveyed to Brown. Each of these tracts corner on Mays' or Barbour's line, and two of them, the one conveyed to Wilson and the one to Brown run with that line according to the original call, N. 60 W. and all of them begin near Harmon Brown Spring. By reason of the peculiar configuration of these three tracts where they corner together it is impossible for Mays' or the dividing line to run further north than the line established by the processioners without missing this common corner. But the line run from the stone, Berry's corner, north 60° west strikes the beginning corner of the 70 and 67 acres tracts established by the processioners, also the corner of the three tracts sold by Blight and Darby on the south side of the dividing line, and terminates about ten feet north of Harmon Brown Spring, called for in Blight's deed to Wilson and Wooldridge to Brown. Besides to locate the dividing line farther

north than it was fixed by the processioners would not only require a departure from the calls in all the original deeds, but render it impossible for the tracts conveyed by Blight on the south, as well as the 70 and 67 acre surveys on the north side of the dividing ridge to close.

In our opinion therefore it is thus demonstrated that the dividing line was correctly established by the processioners from Berry's corner to the point about ten feet north of the Brown Spring. And if any further evidence was required, that of Shacklett, an old surveyor who ran the line in 1858 or 1859 satisfactorily shows the line established by the processioners is correct. For he testifies that the line run by him was about the same as that fixed by the processioners, and the line was then marked, whereas the marks on the line claimed by appellees is of more recent date and in his opinion not over twenty years old.

In the judgment rendered in these two cases the court expressed the opinion that the line established by the processioners is the true division line, but that from the proof the court establishes the line as admitted by Clark White to Cox as being the line, which is the one claimed by appellees, running from the most eastern corner of Fitchen on Mays' line about N. 57 West.

Cox is not now, nor was he at the date of the conversation he says he had with White in 1843 an owner of any part of the land claimed by appellant or appellees. What White said to him was not an agreement or even a recognition of the division line, that in the meaning of the law barred White or his vendees. If the statement of the witness be credited it amounts to no more than an expression of an opinion by White that did not bind or compromise his rights and at most is but evidence of where the line was, which might be and has been shown to be incorrect.

The plea of limitation can not avail appellees except to the extent of the land in controversy they had enclosed fifteen years next before the commencement of this action. For as appellant and those under whom he claims took and held possession of the 70 and 67 acres under the deed from Blight and Darby to Brandenburg, their right of entry has not been tolled except as to land actually enclosed by appellees and those under whom they claim for fifteen

years, especially as their deeds all call for the division line and some of them for the line of appellant's vendor.

The record does not show how much of the land that has been sued for has been thus enclosed, though undoubtedly no part of it has been. It devolved upon appellees to show the extent of their possession and having failed to do so, and still failing, the judgment should be in favor of appellant for recovery of the land to the line fixed by the processioners. But upon the return to the cause the chancellor may hear further proof on that point and render judgment in favor of appellant for all the land up to the line mentioned not enclosed by appellees fifteen years before the commencement of the action.

Judgment is *reversed* and cause remanded for further proceedings consistent with this opinion.

*C. C. Fairleigh, for appellant.*

*Butler & Brashear, for appellees.*